# TALBOT v. SIOUX CITY FIRST NATIONAL BANK.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 164. Argued March 17, 18, 1902.—Decided April 14, 1902.

The defendant in error moved to dismiss the action on the ground that no Federal question was decided by the Supreme Court of Iowa. *Held*, that the motion should be overruled, as the plaintiff explicitly based his right of action on Rev. Stat. §§ 5197, 5198, and as the judgment of the trial court, and that of the Supreme Court of the State, denied such right, and this court therefore has jurisdiction.

In these statutes relating to illegal interest, it is the interest charged, and not the interest to which a forfeiture might be enforced that the statute regards as illegal, and if interest greater than the legal rate is charged, it may be relinquished, and recovery had of the legal rate.

THIS action was brought by the plaintiff in error in the District Court of Iowa, in and for Woodbury County, under section 5198 of the Revised Statutes of the United States, to recover twice the amount of interest alleged to have been due the defendant by the plaintiff on account of certain transactions had between it and the plaintiff. The District Court gave judgment against the plaintiff, and the Supreme Court of the State affirmed the judgment. The Chief Justice of the State allowed this writ of error.

The defendant in error was at the time of the transactions between it and the plaintiff a national bank. Plaintiff did business with it from January 1, 1886, until March, 1890, the instances of which are detailed in a pleading which occupies fifty-six pages of the record. During that time deposits were made by plaintiff with the bank, drafts were drawn by him, and his own and the promissory notes of others were given to the bank. Finally the transactions culminated according to the petition as follows:

"That on or about the 15th day of March, 1890, all of the indebtedness evidenced by said charges, account and notes then claimed by defendant against plaintiff was incorporated into

certain bonds of that date made and executed and delivered by plaintiff to the Union Loan and Trust Company of Sioux City, Iowa, as trustee for defendant, which said bonds were in the sum of $1000 each, in all one hundred bonds, into which at that time and subsequently all of said indebtedness, except that represented by said note for $3040.38, executed and delivered to the defendant on the 17th day of June, 1890, was merged. That said bonds were secured by mortgage on certain lands situated in the counties of Woodbury and Plymouth, in the State of Iowa. On or about the 3d day of March, 1892, a suit in equity was commenced in the District Court of Woodbury County, Iowa, and a judgment and decree was entered against plaintiff on or about the 23d day of December, 1893, for the sum of $94,578.90, being the entire indebtedness due from plaintiff to defendant as entered by said court upon the said bonds and said note for $3040.38. And on the 19th day of March, 1894, upon the execution sale of the premises mortgaged to secure said indebtedness, the defendant knowingly took and received the entire sum of said judgment, including all the usurious interest before that time, knowingly charged in the said account for overdrafts upon all of the said notes and bonds, in all the sum of $47,020.37. That the items of interest upon the overdrafts aforesaid, charged upon account against plaintiff, were so charged without any contract therefor, at the time of such charging were each and all at a higher rate of interest than that allowed by law of Iowa, corrupt and usurious, and in violation of sections 5197 and 5198 of the Revised Statutes of the United States. The items of interest upon overdrafts aforesaid, charged by defendant and carried into the notes aforesaid, were knowingly charged, contracted for by their incorporation in said notes, reserved, taken and received by the defendant as a part of the entire amount of interest paid by the plaintiff and knowingly received by defendant, in the total amount of money collected upon said judgment and decree, and knowingly charging, contracting, reserving, taking and receiving of which was a corrupt and usurious transaction, in violation of sections 5197 and 5198 of the Revised Statutes of the United States, and occurred within two years prior to the commencement of this ac-

tion. That the entire amount of interest as aforesaid, knowingly charged, contracted for, taken and received was in amount the sum of $47,020.37, whereby defendant became indebted to plaintiff in the sum of $94,040.74, no part of which has been paid."

The answer of the defendant admitted substantially the allegations of the petition detailing the transactions between it and the plaintiff, but alleged that it charged plaintiff only the interest permitted by the laws of Iowa, "and that if at times, through the inadvertence or mistake of the clerks and accountants of the bank, the bank charged more than such proper rate, at other times, through similar inadvertence and mistake, a less amount was charged, so that during the course of its business with the plaintiff, the total amount charged to him as interest upon overdrafts was two thousand seventy-eight dollars and eighty cents ($2078.80), while at the legal rate under the laws of Iowa, and according to the custom of bankers, there was due from the plaintiff to the defendant the sum of two thousand ninety-six dollars and sixty cents ($2096.60), and there was no intention to charge usurious interest at any time."

The answer also admitted that all the unpaid indebtedness of plaintiff remaining was included in the bonds of plaintiff, which was secured by a mortgage upon his real estate as alleged, and that the mortgage was foreclosed and the property sold, but denied that any interest upon the overdrafts was paid by the sale, but averred "that before the rendition of the judgment and decree in the said foreclosure proceedings, the court ordered deducted from the amount found due all sums charged as interest upon overdrafts, which was in fact deducted, and such sums were not included in the judgment and decree, and the defendant denies that on the sale of the property of the plaintiff on the said judgment foreclosure, any of the sums of interest upon overdrafts were thereby paid, but on the contrary alleges that there is still a large deficit on the said judgment, amounting to about the sum of ten thousand dollars ($10,000), which was not paid by the sale of the said property, and has not since been paid."

The answer also alleged that if usurious interest was paid by the plaintiff "it was so paid more than two years prior to the time of the commencement of this suit, and therefore said suit is barred by lapse of time."

The answer also alleged a settlement between defendant and the plaintiff on the 17th of June, 1890, in pursuance of which the plaintiff delivered to the defendant $61,000 in the bonds already mentioned, and his promissory note for $3048.38, and "that the said bonds and note were received by the defendant in full payment and settlement of all existing liability and indebtedness on the part of the plaintiff to the defendant, and thereby the plaintiff paid to this defendant all sums charged for interest or otherwise, and that the said settlement took place more than two years prior to the bringing of this suit, and this suit is therefore barred by limitation."

The answer also pleaded the foreclosure suit in bar.

The plaintiff filed a reply traversing the allegations of the answer.

The case was referred to a referee to report the facts. It is not necessary to give the report of the referee in full. He found that defendant had charged interest on plaintiff's overdrafts to the amount of $2064, and that the average rate of interest charged was 10.22 per cent, and the total amount of interest charged in excess of 10 per cent was $72. That the interest on the overdrafts was included in the various notes given by the plaintiff prior to March 15, 1890; "and all of the indebtedness of plaintiff to defendant, arising or growing out of said bank account from January 1, 1886, to March 15, 1890, was evidenced by said notes, but said notes were not given in payment of said indebtedness."

The referee also found the execution of the negotiable bonds by plaintiff, and the mortgage to secure the same as alleged in the proceedings, the foreclosure of the mortgage, and that plaintiff, "in his answer and amendments in said case set up that excessive interest had been charged on overdrafts by the First National Bank, and said interest had been included in the notes afterwards given, and said notes were merged in the bonds in suit, and asked that an accounting be had of the amount of ex-

cessive interest charged on said overdrafts, and that the amount so found be deducted from the amount due on the bonds; and said D. H. Talbot, in support of his allegation, introduced evidence showing the amount of interest charged on said overdrafts; and in the determination of the case the court found that excessive interest on overdrafts to the amount of two thousand and sixty-four dollars ($2064.00) had been charged the plaintiff, and ordered that said two thousand and sixty-four dollars ($2064.00), with interest at the rate named in the bonds, amounting to five hundred ninety-five dollars and forty-six cents ($595.46), making a total of two thousand six hundred nine dollars and forty-six cents ($2609.46), be deducted from the amount due on the bonds, and a decree was entered in said case for the amount due on said bonds, less said sum of two thousand six hundred nine dollars and forty-six cents ($2609.46).

"Ninth. That in said cause a decree for ninety-four thousand five hundred seventy-eight dollars and ninety cents ($94,578.90) was rendered, of which forty-nine thousand seventy dollars and forty-seven cents ($49,070.47) was principal, thirty thousand nine hundred eighty-eight dollars and fifty-two cents ($30,988.52) was interest and fourteen thousand five hundred nineteen dollars and ninety-one cents ($14,519.91) was the amount paid on prior liens, taxes and interest on same by plaintiff in that action.

"Tenth. That the sheriff, under an execution issued on said decree, sold March 19, 1894, plaintiff's property, amounting to thirty-six thousand four hundred thirty-nine dollars and fifteen cents, ($36,439.15); and on May 19, 1894, under said execution sold property amounting to fifty thousand and sixty dollars ($50,060), and on July 2, 1894, sold under said execution property amounting to twelve hundred dollars ($1200.00), making a total of eighty-seven thousand six hundred ninety-nine dollars and fifteen cents ($87,699.15) realized from sheriff's sale of said land under said decree, and leaving a balance, including the interest to date of sale, of eleven thousand one hundred forty-one dollars and five cents ($11,141.05) unpaid on said judgment and decree, which balance, with interest, has not been paid.

"Eleventh. That the interest on overdrafts, not having been

included in said decree, was not paid by the sale of plaintiff's land under said execution.

"Twelfth. That plaintiff's overdrafts, including interest thereon, was paid June 17, 1890, more than four (4) years before the commencement of this action."

As conclusions of law the referee found as follows:

"First. That interest on overdraft was excessive, but not illegal, or usurious, and did not taint the subsequent debt, notes and bonds, of which it formed a part of the consideration.

"Second. That the custom of bankers to compute interest on a commercial basis of thirty days to the month, making three hundred and sixty days to the year, under the tables, is legal.

"Third. That plaintiff's cause of action occurred June 17th, and this suit is barred under section 5198 of the Revised Statutes of the United States, on which this action is based.

"Fourth. That the matter in this suit was adjudicated between the same parties in the case of the *Union Loan & Trust Company* v. *D. H. Talbot*, and that relief could have been granted, and plaintiff is now estopped from maintaining this suit.

"Fifth. That interest charged plaintiff on overdraft was not included in and did not form a part of the decree in the case of the *Union Loan & Trust Company* v. *D. H. Talbot*, and was not paid by said sheriff's sale of plaintiff's property under execution issued on that decree."

He recommended that judgment be entered dismissing plaintiff's petition, and that defendant have judgment for costs.

That plaintiff filed exceptions to the report, and the matter came on to be heard March 19, 1896, and the court adjudged that the conclusions of the referee were correct; that the matters in the suit had been adjudicated in the former action; that plaintiff's cause of action had accrued June 17, 1890, and that his suit was barred by the statute of the United States upon which the action was based, and plaintiff's petition was dismissed.

The Supreme Court of the State, in passing on the case, affirmed the findings of fact of the referee, but said " that it was

entirely clear under the evidence that all interest charged on overdrafts in excess of six per cent was a greater rate of interest than was allowed by the laws of this State."

The court further said :

" We have seen that unless the plaintiff has paid the illegal interest he is not entitled to recover it in this action.   If it may be said that the delivery of the sixty-one bonds on June 17, 1890, was a payment, this action is barred, as it was not commenced ' within two years from the time the usurious transactions occurred,' having been commenced March 8, 1895.

" The interest on overdrafts was surely not paid by the sale of the land, for, as we have seen, it was not included in the decree.   As we view the case, we think the illegal charges of interest have never been paid, and therefore the plaintiff is not entitled to recover in this action.

" IV.  There is some dispute as whether plaintiff set up these charges of illegal interest in the action to foreclose the trust deed so as to constitute a former adjudication.   That he set it up and that it was adjudicated we have no doubt.   True, it was not set up with the same fullness and elaboration as in this case. Unquestionably it is matter which might have been plead in that case, and under a familiar rule the plaintiff must be held to have asserted all available defences to that action.

" V.  Said section 5198 provides that actions to recover back illegal interest paid must be commenced ' within two years from the time the usurious transactions occurred.'   Now, whether or not we call the delivery of the bonds a payment, it is evident that the usurious transaction occurred on and before June 17, 1890, and it follows that this action is barred.   These questions are so largely questions of fact and rest upon familiar and undisputed principles of law that we do not find it necessary to refer to any of the many authorities cited.

" The lower court was fully warranted in affirming the findings of fact as reported by the referee.   While we do not concur in the conclusions of law that the interest on overdrafts was excessive, but not illegal or usurious, and that the custom of banks to compute interest on the commercial basis of thirty

days to the month is legal, still it does not follow that the judgment of the District Court is erroneous.

"It is correct, notwithstanding the charge of illegal interest, because the plaintiff has never paid that interest, but has been allowed the full benefit of the facts in the foreclosure case and because this action was not brought within two years of the time the usurious transaction occurred."

The assignments of error present the following contentions: That the agreement of June 17, 1890, in pursuance of which the negotiable bonds of plaintiff were delivered to the defendant, did not constitute a payment of the interest on the overdrafts theretofore charged, but that the sales in the foreclosure suit May 19 and July 2, 1894, constituted such payment, and as the action was brought within two years from the latter dates, it was not barred; that the foreclosure suit was not *res judicata* because the defence of illegal interest was based upon the law of the State of Iowa, and not upon the Revised Statutes of the United States; that illegal interest was embraced in the judgment in the foreclosure suit; that the deduction which was made was only of the illegal interest on the overdrafts, and of no other interest; that the Revised Statutes direct "a forfeiture of the entire interest," not merely of the amount of interest paid in excess of that allowed by law; that section 5198 provides that in case the greater rate of interest has been paid, the person so paying the sum "may recover back . . . the amount of interest so paid."

*Mr. A. A. Hoehling, Jr.,* and *Mr. James K. Redington* for plaintiff in error.

*Mr. Asa F. Call* for defendants in error.

Mr. Justice McKenna, after making the above statement, delivered the opinion of the court.

1. We are first confronted by a motion to dismiss the action on the ground that no Federal question was decided by the Supreme Court of Iowa. We think the motion should be over-

ruled. The plaintiff explicitly based his right of action upon sections 5197 and 5198 of the Revised Statutes of the United States. The judgment of the trial court and that of the Supreme Court of the State denied such right. Sec. 709, Revised Statutes. This court, therefore, has jurisdiction.

2. Section 5197 authorizes a national bank to charge the rate of interest fixed by the laws of the State in which the bank is doing business. The consequences of a charge in excess of such rate are expressed in section 5198 to be as follows:

" The taking, receiving or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest, which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same; provided, such action is commenced within two years from the time the usurious transaction occurred."

Two cases are provided for (1) where illegal interest has been taken, received or charged; (2) where illegal interest has been paid. In the first case the entire interest which the " evidence of debt carries with it " shall be deemed forfeited. In the second case the person who has paid " the greater rate of interest may recover twice the amount of interest thus paid."

In what way is the statute available to plaintiff? Or, rather, in what way was it available when the foreclosure suit was brought and in what way is it yet available? Had illegal interest been paid by plaintiff at that time or had illegal interest been only charged by defendant? The latter is the contention of the plaintiff, and he controverts the position taken by the Supreme Court of Iowa, that the agreement of June 17, 1890, constituted a payment, and that the action was barred because not commenced within two years from that date. We may yield, arguendo, to plaintiff's contention, and thereby eliminate the statute of limitations from consideration. But nevertheless the judgment must be affirmed.

The plaintiff's situation, then, at the time of the foreclosure suit was that he was sued for illegal interest charged but not paid, and he entered a defence to avoid its payment. He was successful. The court found that he had been charged illegal interest, and deducted its amount from the sum for which he was sued. In other words, judgment was rendered against him for the principal sum and legal interest. But he insists that such judgment was not the full relief to which he was entitled. To that judgment, he claims, he was entitled under the state law which he pleaded, but that under the statutes of the United States, which he could not plead, as he contends, he was entitled to a forfeiture of the entire interest, and as such forfeited interest was included in the judgment it was paid by the sale under the judgment of the property mortgaged, and a cause of action immediately arose to recover twice the amount of that interest so paid. We cannot assent to the contention. It is the interest charged, not the interest to which a forfeiture might be enforced, that the statute regards as illegal. And a forfeiture may or may not occur. Interest greater than the legal rate may be charged, but it may be relinquished and recovery be had of the legal rate. This was decided in *McBrown* v. *Scottish Investment Company*, 153 U. S. 318, and repeated in *Savings Society* v. *Multnomah County*, 169 U. S. 421. Those cases also decided that illegal interest ("the greater rate" the statute calls it) must be paid, to be recovered back. Indeed, it is a contradiction to say that interest may be recovered back which has not been paid, and whether it is relinquished before suit or deducted by order of the court before judgment, it is in neither case paid by the judgment nor by the satisfaction of the judgment. The fact of payment of the illegal interest, the statute makes a condition of the recovery of its penalty. If there can be a substitute for such payment it cannot be found in the insufficiency of the pleading or the deficiency of the relief, in another action.

*Judgment affirmed.*

MR. JUSTICE GRAY took no part in the decision.